IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-00395-WYD-KLM

JOSEPH VILLANUEVA,

      Plaintiff,

v.

ACCOUNT DISCOVERY SYSTEMS, LLC.,

      Defendant.

_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Plaintiff's Motion for Default Judgment [#11][1] (the

"Motion").  Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C.Colo.LivCivR 72.1(c), the Motion

has been referred to the undersigned for a recommendation regarding disposition [#5].  In

the Motion, Plaintiff asks the Court to enter default judgment against Defendant pursuant

to Fed. R. Civ. P. 55(b)(2).  *Motion* [#11] at 2.  Defendant has not responded to the Motion.

The Court has reviewed the pleadings, the entire case file, and the applicable law, and is

sufficiently advised in the premises.  For the reasons set forth below, the Court respectfully

**RECOMMENDS** that the Motion [#11] be **GRANTED in part** and **DENIED in part.**

### I.    Factual and Procedural Background

Plaintiff filed this suit on February 13, 2014 [#1], alleging that Defendant violated the

_____

[1] "[#11]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF).  This convention is used throughout the Recommendation.

Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, through its attempts to collect the debt that Plaintiff allegedly owed to a third party. *Compl.* [#1] ¶ 29. Specifically, Plaintiff alleges that Defendant violated the FDCPA in one or more of the following ways: (1) by using unfair or unconscionable means to collect or attempt to collect a debt in violation of 15 U.S.C. § 1692f; and (2) was otherwise deceptive and failed to comply with the provisions of the FDCPA. *Id.*

Plaintiff is an individual who resides in Denver, Colorado. *Id.* ¶ 4. Defendant allegedly is a business entity registered as a limited liability company in New York and engaged in the collection of debt in Colorado. *Id.* ¶ 8. Plaintiff alleges that he owed a debt for credit card charges, *id.* ¶¶ 5-6, and that he and Defendant entered into a payment arrangement regarding the credit card debt in January 2013. *Id.* ¶ 14. Plaintiff alleges that, under the payment arrangement, he agreed that Defendant could withdraw a payment of $64.50 from Plaintiff's debit card account each month until the debt was paid in full. *Id.* ¶¶ 15-16.

According to Plaintiff, the parties adhered to this arrangement through approximately September 2013. *Id.* ¶ 17. Plaintiff alleges that in November 2013, he lost his employment. *Id.* ¶ 18. Plaintiff further alleges that after losing his employment, he telephoned and informed Defendant that he could no longer adhere to the payment arrangement, and that the maximum he could afford to pay was $25 per month. *Id.* ¶¶ 19-21. Defendant allegedly refused to accept Plaintiff's offer to pay $25 per month. *Id.* ¶ 22. Plaintiff alleges that on November 26, 2013, he telephoned and informed Defendant that Defendant did not have his consent to withdraw $64.50 from his debit card account under the previous payment arrangement. *Id.* ¶ 23. Plaintiff further maintains that he instructed

2

Defendant not to withdraw any money from his account without his permission.  *Id.* ¶ 24.

Plaintiff alleges that, despite his instructions, Defendant withdrew $115 from his debit card

account on or about November 29, 2013.  *Id.* ¶ 27.  Plaintiff further alleges that, as a result

of Defendant's withdrawal of these funds, he has suffered, and continues to suffer,

personal humiliation, embarrassment, mental anguish, and emotional distress.  *Id.* ¶ 30.

Plaintiff served Defendant with the Complaint on February 28, 2014, thereby making

Defendant's answer or other response due by March 21, 2014 [#7].  Defendant failed to file

an answer or any other response and, pursuant to Fed. R. Civ. P. 55(a), the Clerk of the

Court entered default against Defendant on May 29, 2014 [#9].  Plaintiff subsequently filed

the present Motion [#11], in which he seeks entry of default judgment against Defendant.

Plaintiff requests actual damages, statutory damages, attorneys' fees, and costs.

## II.    Analysis

Pursuant to Fed. R. Civ. P. 55(a), default may enter against a party who fails to

appear or otherwise defend the case brought against it.  However, even after entry of

default, the Court must decide "whether the unchallenged facts create a legitimate basis

for the entry of a judgment."  *See Greenwich Ins. Co. v. Daniel Law Firm*, No. 07-cv-2445-

LTB-MJW, 2008 WL 793606, at *1 (D. Colo. Mar. 22, 2008) (citations omitted).  "[A] party

is not entitled to a default judgment as of right; rather the entry of a default judgment is

entrusted to the 'sound judicial discretion' of the court."  *Id.* at *2 (quoting *Cablevision of S.

Conn., Ltd. P'ship v. Smith*, 141 F. Supp. 2d 277, 281 (D. Conn. 2001)).

Pursuant to Fed. R. Civ. P. 55(b), in considering the Motion, the decision to enter

default judgment is "committed to the district court's sound discretion . . . ."  *Olcott v. Del.

Flood Co.*, 327 F.3d 1115, 1124 (10th Cir. 2003) (quotation omitted).  When exercising that

3

discretion, the Court considers that "[s]trong policies favor resolution of disputes on their merits." *Ruplinger v. Rains*, 946 F.2d 731, 732 (10th Cir. 1991) (internal quotation and citation omitted). Further, "[t]he default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party." *Id.* It serves to protect a plaintiff against "interminable delay and continued uncertainty as to his rights." *Id.* at 733.

## A.    Jurisdiction

In determining whether the entry of default judgment is warranted, the Court must first consider whether the Court has subject matter and personal jurisdiction. *Dennis Garberg & Assocs. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 772 (10th Cir. 1997); *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1202-03 (10th Cir. 1986). The Court must do so in consideration of the well-established law that "a judgment is void if the court that enters it lacks jurisdiction over either the subject matter of the action or the parties to the action." *Williams*, 802 F.2d at 1203.

### 1.    Subject Matter Jurisdiction

Plaintiff asserts that the Court has subject matter jurisdiction over this lawsuit based on federal question jurisdiction in accordance with his claim brought pursuant to the FDCPA. *See Compl.* [#1] ¶ 2. Federal question jurisdiction is governed by 28 U.S.C. § 1331, which provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Plaintiff's cause of action arises under the FDCPA, 15 U.S.C. § 1692, et. seq., a federal statute. *Id.* Therefore, the action arises under the laws of the United States, and the Court may exercise subject matter jurisdiction over this dispute pursuant to 28 U.S.C.

4

§ 1331.  Furthermore, as set forth in the FDCPA, 15 U.S.C. § 1692k(d), a plaintiff may pursue a civil cause of action "in any appropriate United States district court without regard to the amount in controversy . . . within one year from the date on which the violation occurs."  Plaintiff filed this action on February 13, 2014, which is less than one year after Defendant allegedly withdrew $115 from Plaintiff's account without authorization.  *See Compl.* [#1] ¶ 27.  The action is therefore timely under 15 U.S.C. § 1692k(d), and as Plaintiff brings the lawsuit under the FDCPA, the action arises pursuant to a federal statute. Accordingly, the Court recommends finding that the Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1331.

Plaintiff also asserts that the Court has jurisdiction pursuant to 28 U.S.C. § 1337. *Compl.* [#1] ¶ 2.   Under 28 U.S.C. § 1337, "[t]he district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce . . . ." 28 U.S.C. § 1337(a).  However, "this statute provides no additional grant of jurisdiction beyond that provided in 28 U.S.C. § 1331." *Dutcher v. Matheson*, 733 F.3d 980, 985 n.4 (10th Cir. 2013).  Because jurisdiction over the subject matter has already been established through 28 U.S.C. § 1331, establishing subject matter jurisdiction through 28 U.S.C. § 1337 is "superfluous."  *See id.* (quoting 13D Charles Alan Wright, et al., Federal Practice & Procedure § 3574 (3d ed., April 2013 update) (footnotes omitted)).

### 2.    Personal Jurisdiction

Before analyzing personal jurisdiction, the Court must first address the adequacy of service of process.  *See United States v. Elsberg*, No. 08-cv-00522-MSK-KLM, 2010 WL 5177439, at *2 (D. Colo. Aug. 17, 2010).  In the Complaint, Plaintiff asserts that Defendant is a business entity registered as a limited liability company in New York and engaged in

5

the collection of debt within Colorado.  *Compl.* [#1] ¶ 8.  Rule 4(h) of the Federal Rules of Civil Procedure applies to service of process on a corporation, partnership, or association.[2] Rule 4(h) states that a corporation may be served "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process . . . ."  Fed. R. Civ. P. 4(h)(1)(B).  On May 28, 2014, Plaintiff filed a Return of Service demonstrating that on February 28, 2014, a private process server personally served "David Segal, Service Representative," who stated he was authorized to accept service on behalf of "Account Discovery Systems LLC at 495 Commerce Drive, Suite 2, Amherst, New York 14228 . . . ."  *See Return of Service* [#7].  The Court is satisfied that Plaintiff has used due diligence in serving Defendant.  Therefore, the Court finds that Plaintiff has obtained adequate service here and satisfied Fed. R. Civ. P. 4(h).

Regarding personal jurisdiction, "[P]laintiff need only make a prima facie showing [of personal jurisdiction] if the motion [for default judgment] is decided only on the basis of the parties' affidavits and other written materials."  *Dennis Garberg & Assocs., Inc.*, 115 F.3d at 773.  The Court may only exercise personal jurisdiction over a non-resident defendant if: (1) the long-arm statute of Colorado permits personal jurisdiction in this case; and (2) the exercise of personal jurisdiction in Colorado comports with the Due Process Clause of the United States Constitution.  *Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1276 (10th Cir. 2005); *see also Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514

---

[2]  The service of process requirements under Fed. R. Civ. P. 4(h) also customarily apply to a limited liability company ("LLC").  *See, e.g., Kuberski v. Cred X Debt Recovery, LLC*, No. 11-cv-03247-RPM-KLM, 2012 WL 2943726, at *4 (D. Colo. 2012, July 2, 2012).

F.3d 1063, 1070 (10th Cir. 2008).  The Supreme Court of Colorado interprets Colorado's long-arm statute "to confer the maximum jurisdiction permitted by the due process clauses of the United States and Colorado constitutions."  *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005).  Accordingly, because a due process analysis of jurisdiction in this case will also satisfy Colorado's long-arm statute, the Court need only consider whether the exercise of personal jurisdiction over Defendant is permitted by the Due Process Clause.  *SCC Commc'ns v. Anderson*, 195 F. Supp. 2d 1257, 1260 (D. Colo. 2002) ("[The] analysis turns on a single inquiry, whether the exercise of personal jurisdiction over [the defendant] comports with due process."); *Dudnikov*, 514 F.3d at 1070 ("[T]he first, statutory, inquiry effectively collapses into the second, constitutional, analysis.").

The Due Process Clause requires that the Court conduct a two-step analysis of personal jurisdiction.  First, the Court must examine "whether the non-resident defendant has 'minimum contacts' with the forum state such that [it] should reasonably anticipate being haled into court there."  *TH Agric. & Nutrition, LLC v. Ace European Grp., Ltd.*, 488 F.3d 1282, 1287 (10thCir. 2007) (citation and quotation mark omitted).  Second, if the defendant has sufficient contacts, the Court then asks "whether the court's exercise of jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice,'" that is, whether the exercise of jurisdiction is "reasonable" under the circumstances.  *Id.* (citation and some quotation marks omitted).

### a.    Minimum Contacts

The "minimum contacts" requirement of due process may be met by showing the existence of general or of specific jurisdiction.  *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1532 (10th Cir. 1996).  The requisite minimum contacts exist if the

non-resident defendant has continuous and systematic contacts with the forum state (general jurisdiction) or if the defendant (i) has purposefully directed activities at forum residents or otherwise acted to avail itself purposefully of the privilege of conducting activities there and (ii) the litigation results from alleged injuries that arise out of or relate to those activities (specific jurisdiction). *Impact Prods. Inc. v. Impact Prods., LLC*, 341 F. Supp. 2d 1186, 1190 (D. Colo. 2004). In short, Defendant must have purposely established minimum contacts with the forum state such that it "should reasonably anticipate being haled into court" there. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).

To determine whether specific jurisdiction over Defendant is appropriate, the Court must examine whether: (1) Defendant purposefully directed its activities at Colorado or its residents or acted in some other way by which it purposefully availed itself of the benefits and protections of conducting business in Colorado, and (2) Plaintiff's claims arise out of or relate to Defendant's forum-related activities. *Impact Prods.*, 341 F. Supp. 2d at 1190. The aim of the "'purposeful direction' doctrine has been said by the Supreme Court to [be to] ensure that an out-of-state defendant is not bound to appear to account for merely 'random, fortuitous, or attenuated contacts' with the forum state." *Dudnikov*, 514 F.3d at 1071 (quoting *Burger King*, 471 U.S. at 475). The defendant must therefore have "deliberately" created some relationship with the forum state that would serve to make that state's potential exercise of jurisdiction foreseeable. *Burger King*, 471 U.S. at 475-76.

Here, as alleged by Plaintiff, Defendant purposely established continuous and systematic contacts with a Colorado resident such that Defendant submitted itself to the general jurisdiction of the state. Plaintiff alleges that Defendant entered into a payment

8

arrangement for the collection of Plaintiff's debt that lasted for approximately nine months. *Compl.* [#1] ¶¶ 14-17.  According to Plaintiff, during this time, Defendant withdrew $64.50 from Plaintiff's debit card account each month.  *Id.* ¶ 16.  Through these activities, Defendant purposefully directed its activities toward a resident of Colorado and could have reasonably anticipated being haled into court in Colorado.  Furthermore, Defendant purposefully directed itself of the privilege of conducting activities in Colorado such that the prospect of being haled into court here was foreseeable.  Plaintiff maintains that, on November 29, 2013, although Plaintiff had revoked his consent to the withdrawals, Defendant withdrew $115 from Plaintiff's debit card account without Plaintiff's authorization. *Compl.* [#1] ¶¶ 26-27.  Plaintiff alleges that this action constitutes "unfair and/or unconscionable means to collect or attempt to collect a debt in violation of 15 U.S.C. § 1692." *Compl.* [#1] ¶ 29.  Thus, Plaintiff's claim arises out of Defendant's forum-related activities. *See Kuberski v. Cred X Debt Recovery, LLC*, No. 11-cv-03247-RPM-KLM, 2012 WL 2943726, at *6 (D. Colo. July 12, 2012) (finding that the Court could exercise specific jurisdiction over an out-of-state debt collector that had, in addition to other collection activities, threatened to take action against the plaintiff through her bank account).  The Court therefore finds that Defendant had minimum contacts with the forum state of Colorado.

### b.    Traditional Notions of Fair Play and Substantial Justice

Additionally, the Court finds that exercising jurisdiction over Defendant does not "offend traditional notions of fair play and substantial justice." *Impact Prods.*, 341 F. Supp. 2d at 1190.  Regarding "traditional notions of fair play and substantial justice," courts consider:

(1) the burden on the defendant, (2) the forum state's interests in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effectual relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states [or foreign nations] in furthering fundamental social policies.

*Dudnikov*, 514 F.3d at 1080 (citation omitted).  The Court addresses each of these factors in turn.  First, the Court's exercise of jurisdiction over Defendant would not create an undue burden on Defendant.  "[I]t is only in highly unusual cases that inconvenience will rise to a level of constitutional concern . . . . [I]n this age of instant communication, and modern transportation, the burdens of litigating in a distant forum have lessened."  *Peay v. Bellsouth Med. Assistance Plan*, 205 F.3d 1206, 1212-13 (10th Cir. 2000) (citations, quotations, and footnote omitted).  Therefore, requiring Defendant to travel from New York to defend this action in Colorado would not create an undue burden.

Second, "[s]tates have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors."  *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1096 (10th Cir. 1998).  Plaintiff alleges that Defendant unfairly and unconscionably withdrew payment from Plaintiff's debit card account without Plaintiff's consent while Plaintiff was residing in Denver, Colorado.  *Compl.* [#1] ¶¶ 4, 27-29.  Debt collection activity that is directed toward a person through the person's bank account presumably occurs in the place of the person's residence.  *See Kuberski v. Cred X Debt Recovery, LLC*, 2012 WL 2943726, at *6 (holding that an out-of-state defendant's threat to collect a debt through the plaintiff's bank account was a sufficient basis for exercising jurisdiction over the defendant, where the plaintiff resided in Colorado at the time the threat occurred and "any action taken against [the plaintiff] would likely occur in Colorado.").  Here, Defendant took action against Plaintiff by automatically

10

withdrawing money from Plaintiff's debit card account while Plaintiff resided in Colorado. *Compl.* [#1] ¶ 27.  Therefore, Defendant's debt collection action occurred in Colorado and any injury sustained by Plaintiff occurred in Colorado.  Accordingly, Colorado has an interest in providing a forum for Plaintiff to seek redress for his alleged injuries.

The third factor "hinges on whether the [p]laintiff may receive convenient and effective relief in another forum," *Benton*, 375 F.3d at 1079, and the fourth factor asks "whether the forum state is the most efficient place to litigate the dispute."  *Id.* at 1080 (quotations and citation omitted).  In this case, Plaintiff could receive effective, albeit less convenient, relief in New York.  However, Colorado is the most efficient forum to litigate this dispute because Plaintiff resides in Colorado, the alleged injury occurred in Colorado, and Defendant is out-of-state and has not responded to Plaintiff's Complaint or the present Motion.  Therefore, the third and fourth factors weigh in favor of exercising personal jurisdiction over Defendant in Colorado.

The fifth factor "focuses on whether the exercise of personal jurisdiction by [the forum] affects the substantive social policy interests of other states or foreign nations."  *Id.* (quotations and citations omitted).  The purposes of the FDCPA are:

> to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

15 U.S.C. § 1692(e).  Additionally, 15 U.S.C. § 1692(k) states that "[a]n action to enforce any liability created by this subchapter may be brought in any appropriate United States district court . . . ."  Plaintiff alleges that Defendant violated at least one provision of the FDCPA.  *Compl.* [#1] ¶ 29.  Therefore, exercising personal jurisdiction over Defendant in

the forum state where Plaintiff resides and was allegedly injured furthers the policy interests of all states.   Accordingly, the Court finds that exercising jurisdiction over Defendant does not "offend traditional notions of fair play and substantial justice," and the Court may exercise personal jurisdiction over Defendant as a non-resident defendant.

**B.      Entry of Default**

As a threshold issue, the Court confirms the propriety of entry of default.   Fed. R. Civ. P. 55(a) prescribes that "the clerk must enter the party's default" if "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Plaintiff initiated this lawsuit on February 13, 2014.   *See generally Compl.* [#1].   On May 28, 2014, Plaintiff filed a Return of Service signed under oath by a private process server.   *See generally Return of Service* [#7].   The process server stated that she personally served David Segal, a service representative who stated that he was authorized to accept service of process on behalf of Defendant, on February 28, 2014.   *See id.* [#7] at 2.   Therefore, Defendant was properly served, and its answer or other response to Plaintiff's Complaint was due on or before March 21, 2014.   *See* Fed. R. Civ. P. 12(a)(1)(A)(i).   Defendant did not respond to the Complaint or appear in this matter in any capacity.   On May 28, 2014, Plaintiff filed a Motion for Entry of Default Judgment [#8] and on May 29, 2014, the Clerk of the Court entered default as to Defendant [#9].   Defendant has failed to respond to the entry of default and has "failed to plead or otherwise defend" this lawsuit.   *See* Fed. R. Civ. P. 55(a); *see also State Res. Corp. v. Sirios*, 10-cv-002430-PAB-MJW, 2011 WL 318754, at *2 (D. Colo. Jan. 28, 2011) (holding that entry of default was proper when "[d]efendant's failure to respond [had] thwarted the ability of the Court to resolve the matter on the merits").   Accordingly, the Court finds that the entry of default against Defendant was

12

proper.

## C. Default Judgment

After confirming the propriety of the entry of default, the Court must decide "whether the unchallenged facts create a legitimate basis for the entry of a judgment." *Greenwich Ins. Co.*, 2008 WL 793606, at *1 (citations omitted). "'[T]he default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party. In that instance, the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights. The default judgment remedy serves as such a protection.'" *In Re Rains*, 946 F.2d 731, 733-34 (10th Cir. 1991) (quoting *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970)).

Upon review of a motion for default judgment, the moving party enjoys the benefit of deferential pleading interpretation. The Court deems the well-pled facts (as opposed to merely conclusory statements) of the Complaint in this matter to be true. *Greenwich Ins. +Co.*, 2008 WL 793606, at *1 (citing *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983)). The Court also accepts as undisputed any facts set forth by the moving party in affidavits and exhibits. *Id.*

Thus, the Court must determine whether the allegations contained in Plaintiff's Complaint are sufficient to state a claim for relief. To state a claim for relief, the Complaint must contain sufficient factual matter, accepted as true, to show that the claim is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to reasonably infer that the defendant is liable for the alleged conduct. *Id.* A

13

pleading that offers mere legal conclusions, or a recitation of the elements of a cause of action, is insufficient.  *Id.*

### 1.    Plaintiff's FDCPA Claim

Plaintiff's claim against Defendant arises pursuant to the FDCPA.  *See Compl.* [#1]. The FDCPA is designed to "eliminate abusive debt collection practices by debt collectors . . . and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).  Plaintiff argues that Defendant's debt collection practices violated 15 U.S.C. § 1692f, and that Defendant was otherwise deceptive and failed to comply with the provisions of the FDCPA.  *Compl.* [#1] ¶ 29.  Accepting the well-pled allegations in the Complaint as true and for the reasons stated below, the Court **recommends** that default judgment be entered against Defendant on Plaintiff's claim for a violation of 15 U.S.C. § 1692f.

The Court has explained the standard applied when considering claims brought pursuant to §§ 1692e and 1692f of the FDCPA:

> When deciding claims brought pursuant to §§ 1692e and 1692f of the FDCPA, courts have used a 'least sophisticated consumer' standard to determine whether a debt collector's representations were false, deceptive, misleading, unfair, or unconscionable." *See Cloman v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993) (listing cases).  The least sophisticated consumer standard ensures protection to all "consumers, even the naive and trusting, against deceptive debt collection practices, and . . . protects debt collectors against liability for bizarre or idiosyncratic interpretations of collection notices." *Id.* at 1320.  At least five courts of appeal have applied the least sophisticated standard to alleged violations of § 1692e and § 1692f. *See, e.g.*, *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1194 (11th Cir. 2010); *Lesher v. Law Offices of Mitchell N. Kay, PC,* 650 F.3d 993, 1002 (3d Cir. 2011); *Hartman v. Great Seneca Fin. Corp.,* 569 F.3d 606, 612 (6th Cir. 2009); *Donohue v. Quick Collect, Inc.,* 592 F.3d 1027, 1033 (9th Cir. 2010); *Evory v. RJM Acquisitions Funding, LLC,* 505 F.3d 769, 774 (7th Cir. 2007) (using the "unsophisticated consumer" standard).  The Tenth Circuit has not

expressly adopted this standard, but it has, in an unpublished opinion, "applied an objective standard, measured by how the least sophisticated consumer would interpret the notice received from the debt collector." *Ferree v. Marianos,* 129 F.3d 130, 1997 WL 687693, at *1 (10th Cir. Nov.3, 1997) (internal quotation marks omitted).

*Lewis v. JP Morgan Chase Bank, Nat'l Ass'n*, No. 13-cv-03175-PAB-KLM, 2014 WL 1217948, *16 (D. Colo. Mar. 24, 2014) (quoting *Hudspeth v. Capital Mgmt. Servs., L.P.*, No. 11-cv-03148-PAB-MEH, 2013 WL 674019, at *4 (D. Colo. Feb. 25, 2013)). Accordingly, because the FDCPA is a remedial statute that "should be construed liberally in favor of the consumer," *id.* (quoting *Johnson v. Riddle,* 305 F.3d 1107, 1117 (10th Cir. 2002)), the Court will apply, as it did in *Lewis*, the least sophisticated consumer standard to Plaintiff's § 1692f claim.

To establish a violation of the FDCPA, Plaintiff must show that (1) he is a "consumer" within the meaning of 15 U.S.C. § 1692a(3); (2) the debt arises out of a transaction entered into primarily for personal, family, or household purposes, as required by 15 U.S.C. § 1692a(5); (3) Defendant is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6); and (4) Defendant, through its acts or omissions, violated a provision of the FDCPA. *Sherwood v. BRT Corp.*, No. 12-cv-02782-RM-KMT, 2014 WL 5763191, at *5 (D.Colo. July 8, 2014). The Court reviews Plaintiff's Complaint [#1] for allegations regarding each of these elements. First, Plaintiff has alleged that he is a "consumer" within the meaning of 15 U.S.C. § 1692a(3). *Compl.* [#1] ¶ 7. 15 U.S.C. § 1692a(3) states that a "consumer" means "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3) (2014). Plaintiff is an individual who allegedly owes a debt to Best Buy Co., Inc. *See id.* ¶ 5. Second, Plaintiff has alleged that he owes the debt to Best Buy Co., Inc. for credit card charges incurred primarily for his personal use or for household expenditure.

15

*Id.* ¶¶ 5-6.   Third, Plaintiff has alleged that Defendant was, at all relevant times, a "debt collector" as the term is defined by 15 U.S.C. § 1692a(6).   *Id.* ¶ 12.   In relevant part, 15 U.S.C. § 1692a(6) defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect . . . debts owed or due or asserted to be owed or due another."   15 U.S.C. § 1692a(6) (2014).   Plaintiff has alleged that "[t]he principal purpose of Defendant's business is the collection of debts allegedly owed to third parties" and that "Defendant regularly collects, or attempts to collect, debts allegedly owed to third parties."   *Compl.* [#1] ¶¶ 9-10.   Thus, Plaintiff has alleged that Defendant is a "debt collector" under the FDCPA.   Fourth, Plaintiff has alleged that Defendant violated 15 U.S.C. § 1692f of the FDCPA by withdrawing $115 from Plaintiff's debit card account without Plaintiff's authorization.   *Id.* ¶¶ 27-29; *see* 15 U.S.C. § 1692f (2014).

15 U.S.C. § 1692f prohibits a debt collector from using unfair or unconscionable means to collect or attempt to collect a debt.   15 U.S.C. § 1692f (2014).   The statute provides a non-exclusive list of conduct that would constitute a violation.   Although Plaintiff alleges a violation of § 1692f, he does not specifically allege which, if any, of the listed violations occurred.   Thus, the Court has reviewed 15 U.S.C. § 1692f and finds that § 1692f(1) is applicable here.   The statute states:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by

law.

. . . .

15 U.S.C. § 1692f(1) (2014).

The statute prohibits debt collectors from collecting "any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1) (2014).  Here, Plaintiff has alleged that Defendant violated 15 U.S.C. § 1692f by withdrawing $115 from Plaintiff's debit card account without Plaintiff's authorization.  *Compl.* [#1] ¶ 27.  Specifically, Plaintiff alleges that on or about November 26, 2013, Plaintiff orally informed Defendant that he lost his employment and could no longer pay $64.50 per month as authorized under the prior payment arrangement relative to his debt.  *Id.* [#1] ¶¶ 19-20.  Plaintiff alleges that he orally offered to modify the monthly payment amount to $25, but Defendant rejected this offer.  *Id.* ¶¶ 21-22.  Plaintiff further alleges that he then expressly revoked his consent to the withdrawal of funds from his debit card account, and orally instructed Defendant not to withdraw any money from the account without his permission.  *Id.* ¶¶ 23-24.  Despite Plaintiff's instructions, on or about November 29, 2013, Defendant allegedly withdrew $115 from Plaintiff's debit card account without Plaintiff's authorization.  *Id.* ¶ 27.  Thus, Defendant's alleged withdrawal of $115 from Plaintiff's debit card account was not expressly authorized by the parties' agreement.[3]  In

---

[3]  The Court notes that no written agreement has been provided by Plaintiff.  Further, Plaintiff does not state whether the initial payment agreement entered into by the parties in January 2013 was oral or written.  *See Motion*, Ex. A [#11-1] ("Pltf. Aff.") ¶ 4 ("In or around January of 2013, I entered into a payment arrangement relative to a debt with Account Discovery Systems, LLC."); *Compl.* [#1] ¶ 14 ("In or around January of 2013, Plaintiff and Defendant entered into a payment arrangement relative to the Debt.").  Because Plaintiff is entitled to a deferential pleading standard and he pleads that there was an agreement between the parties, for purposes of this Recommendation, the Court assumes that there was an agreement between the parties containing the terms provided by Plaintiff.

fact, according to Plaintiff, he had expressly instructed Defendant not to make any withdrawals without his permission. *Id.* ¶ 24. Additionally, although the exact terms of the payment arrangement are unknown, there is no indication that the unauthorized withdrawal was expressly authorized by the payment arrangement or that it was otherwise permitted by law. Accepting the well-pled allegations in the Complaint [#1] as true, the Court finds that Defendant violated 15 U.S.C. § 1692f(1) by collecting an amount that was not expressly authorized or permitted by law.

The Court has previously indicated that the unauthorized withdrawal of funds from a person's bank account may constitute a plausible violation of 15 U.S.C. § 1692f. *See Sherwood v. BRT Corporation*, No. 12-cv-02782-RM-KMT, 2014 WL 5763191, at *6 (D.Colo. July 8, 2014) (denying the defendant's motion for summary judgment on the plaintiff's 15 U.S.C. § 1692f claim, noting that "[s]everal decisions have held that making unauthorized withdrawals from a consumer's bank account violates the FDCPA, with at least one decision specifically concluding that such conduct amounts to a violation of § 1692f."); *see also Torres v. Nat'l Enter. Sys., Inc.,* No. 12C2267, 2013 WL 870624, at *2-3 (N.D. Ill. Mar. 7, 2013) (finding that allegations that the defendant withdrew $2,2945.53 when the plaintiff allegedly authorized a withdrawal of only $400 were sufficient to state a claim under § 1692f); *Pearce v. Ethical Asset Mgmt., Inc.*, No. 07-cv-7184, 2010 WL 932597, at *4 (W.D.N.Y Mar. 11, 2010) (finding, for purposes of default judgment, that unauthorized withdrawals from the plaintiff's bank account violated the FDCPA).

Plaintiff has alleged that Defendant withdrew $115 from Plaintiff's debit card account without Plaintiff's authorization on or about November 29, 2013. *Compl.* [#1] ¶¶ 27-29. Plaintiff has sufficiently alleged that Defendant's conduct constitutes an unfair and

unconscionable means of collecting Plaintiff's debt in violation of 15 U.S.C. § 1692f(1). Because the Court has found that Defendant violated § 1692f(1) of the FDCPA, it is unnecessary to determine whether Defendant was "otherwise deceptive and failed to comply" with other provisions of the FDCPA. *Compl.* [#1] ¶ 29. As noted above, Defendant has "failed to plead or otherwise defend" this lawsuit. *See* Fed. R. Civ. P. 55(a). Therefore, accepting the well-pled allegations in the Complaint as true, the Court finds that Defendant violated 15 U.S.C. § 1692f of the FDCPA and that entry of default judgment against Defendant is proper.

### 2.      Damages

In addition to finding that Plaintiff has a legal basis for relief, default judgment cannot be entered until the amount of damages has been ascertained. *See Herzfeld v. Parker,* 100 F.R.D. 770, 773 (D. Colo. 1984). A default judgment for money damages must be supported by proof. *Klapprott v. United States*, 335 U.S. 601, 611-12 (1949). This requirement ensures that a plaintiff is not awarded more in damages than can be supported by actual evidence. *See id.*

Pursuant to Fed. R. Civ. P. 54(c), "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Further, "[a]lthough upon default the factual allegations of a complaint relating to liability are taken as true, those allegations relating to the amount of damages suffered ordinarily is not." *Dundee Cement Co. v. Howard Pipe & Concrete Prods. Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983). In his Motion, Plaintiff requests entry of default judgment in the amount of $1,000 in statutory damages, $15,000 in actual damages, and $3,018 in attorneys' fees and costs. *See Motion* [#11] at 7.

Whether to conduct a hearing for the purpose of ascertaining damages is discretionary; the Court need not conduct a hearing "if the amount claimed is a liquidated sum or one capable of mathematical calculation." *Held v. Shelter Sys. Group Corp.*, No. 93-1225, 1994 WL 47157, at *1 (10th Cir. 1994) (citing *Hunt v. Inter-Globe Energy, Inc.*, 770 F.2d 145, 148 (10th Cir. 1985)).

### a.   Statutory Damages

The FDCPA sets a statutory maximum amount of damages at $1,000 per proceeding. 15 U.S.C. § 1692k(a)(2)(A); *see also Wright v. Fin. Servs. of Norwalk*, 22 F.3d 647, 650-52 (6th Cir. 1994); *Harper v. Better Bus. Servs. Inc.*, 961 F.2d 1562, 1563 (11th Cir. 1992). Thus, regardless of whether Plaintiff establishes a single violation or several violations of the FDCPA, the amount of statutory damages remains the same. *See Harper*, 961 F.2d at 1563. "All that is required for an award of statutory damages is proof that the statute was violated, although a court must then exercise its discretion to determine how much to award, up to the $1,000.00 ceiling." *Savino v. Computer Credit Inc.*, 164 F.3d 81, 86 (2nd Cir. 1998) (citing *Bartlett v. Heibl*, 128 F.3d 497, 499 (7th Cir. 1997)). Thus, a determination that Defendant has committed one violation of the FDCPA is sufficient for the Court to find in favor of Plaintiff as to statutory damages. *Santacruz v. Stanley & Assoc., LLC*, 10-cv-00623-CMA-CBS, 2011 WL 1043338, at *7 (D. Colo. Mar. 17, 2011).

Pursuant to 15 U.S.C. § 1692k(b)(1), in determining the amount of statutory damages in an FDCPA action, the Court must consider, among other relevant factors, "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." 15 U.S.C. § 1692k(b)(1) (2014); *See also Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*,

559 U.S. 573 (2010) (the Court "must" consider the provisions of Section 1692k(b) in awarding damages that are subject to the statutory cap of $1,000 for individual actions); *Jackson v. Diversified Collection Servs., Inc.*, No. 09-cv-00680-WDM-BNB, 2010 WL 1931013 (D. Colo. May 13, 2010) (evaluating a request for increased statutory damages pursuant to Section 1692k(b)(1)).  As stated herein, the Court finds that Defendant violated section 1692f(1) of the FDCPA.  In light of this violation and Defendant's failure to respond to Plaintiff's Complaint, the Court **recommends** finding that the nature and willfulness of Defendant's noncompliance with the FDCPA justifies an award of $1,000 in statutory damages against Defendant

### b.    Actual Damages

Pursuant to 15 U.S.C. § 1692k(a)(1), a debt collector who "fails to comply with any provision . . . with respect to any person is liable to such person in an amount equal to the sum of . . . any actual damage sustained by such person as a result of such failure."[4]  15 U.S.C. § 1692k(a)(1) (2014).  In considering the amount of liability for actual damages, the Court must consider, as it did for statutory damages, "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional."  *Id.* § 1692k(b)(1).

When entering default judgment, the Court takes all of the well-pleaded facts in a complaint as true.  *See United States v. Craighead*, 176 F. App'x 922, 925 (10th Cir. 2006)

---

[4]  For purposes of clarity, the Court considers "actual damages" under 15 U.S.C. § 1692k(a)(1) to include compensatory damages for both emotional distress and out-of-pocket costs. *See Reichers v. Delaware Asset Mgmt., LLC*, No. 13-cv-02171-CMA-CBS, 2013 WL 6096136, at *1-2 (D. Colo. Nov. 20, 2013) (awarding the plaintiff $2,000 for a threatening phone call and voicemail and $211.42 for out-of-pocket losses in the plaintiff's FDCPA claim).

(order and judgment).  "If defendant does not contest the amount prayed for in the complaint by failing to answer and the claim is for a sum certain or a sum that can be made certain by computation, the judgment generally will be entered for that amount without any further hearing."  *Id.* (quoting 10A Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 2688 (3d ed. 1998) (internal quotations omitted); *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974) ("While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation.") "It is a familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly."  10A C. Wright, A. Miller, & M. Kane, *supra*, § 2688 (quoting *Pope v. United States*, 323 U.S. 1, 12 (1944)).

A plaintiff who establishes a violation of the FDCPA may recover damages for personal humiliation, embarrassment, mental anguish, or emotional distress.  *Id.* § 1692k(a)(1); *Reichers*, 2013 WL 6096136, at *2.  In relying on his own testimony to establish emotional harm, Plaintiff is required to "explain [his] injury in reasonable detail and not rely on conclusory statements."  *Reichers*, 2013 WL 6096136, at *2 (citing *Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1182 (10th Cir. 2013) (citation and internal quotation marks omitted)).  However, Plaintiff is not required to produce evidence to corroborate his detailed and specific testimony.  *Id.*  "An injured person's testimony *alone* may suffice to establish damages for emotional distress provided that [he] reasonably and sufficiently explains the circumstances surrounding the injury and does not rely on mere conclusory statements."  *Llewellyn*, 711 F.3d at 1183 (quoting *Bach v. First Union Nat'l*

22

*Bank*, 149 F. App'x 354, 361 (6th Cir. 2005) (emphasis in original)).

Here, Plaintiff seeks $15,000 for actual damages that he suffered as a result of Defendant's FDCPA violation. *Motion* [#11] at 4. The Court must therefore determine whether Plaintiff is entitled to the damages that he seeks. Plaintiff alleges that he suffered, among other things, panic and worry when he learned that Defendant had withdrawn $115 from his account after Plaintiff had revoked his consent to further withdrawals by Defendant; distress over his strained financial resources; devastation from not being able to pay for gas to travel to New Mexico to attend his grandmother's funeral; and familial stress and strife as a result of his absence from the funeral. *See Pltf. Aff.* [#11-1] ¶¶ 7-10.

The Court has previously recognized that, "in the context of FDCPA cases . . . actual damages are often difficult to establish." *Miranda v. Integrity Solution Servs., Inc.*, No. 13-cv-02479-RM-KLM, 2014 WL 519239, at *1 (D. Colo. Feb. 10, 2014). "While there is no exact measuring stick for mental anguish damages . . . . [the] court can [] look to what other courts have done in a similar context." *Randolph v. Ne. Legal Grp., LLC*, No. 2:12-cv-03800-HGD, 2014 WL 2819122, at *8 (N.D. Ala. May 23, 2014). Although the Court has previously awarded actual damages to plaintiffs for violations of the FDCPA, those awards were based on FDCPA violations different from what Plaintiff alleged in his Complaint [#1], and for amounts lower than the amount Plaintiff is requesting. *See Reichers*, 2013 WL 6096136, at *2 (awarding plaintiff $2,000 for a threatening telephone call and voicemail message plus $211.42 for out-of-pocket expenses); *Cordova v. 4 Star Resolution, LLC*, No. 13-cv-01185-CMA-MJW, 2013 WL 4657647, at *2 (awarding plaintiff $1,500 for a single threatening telephone call).

In his Motion [#11], Plaintiff cites several cases with compensatory or actual

23

damages awards that are relatively higher than the amount that Plaintiff is seeking.  *Motion* [#11] at 3;  *see, e.g., Anderson v. Conwood Co.*, 34 F. Supp. 2d 650, 650 (W.D. Tenn. 1999) (reducing a jury award from $2,000,000 to $50,000, holding that, in the absence of proof of other damages, $50,000 is the highest reasonable compensatory damage award for "worry, stress, anxiety, loss of sleep, and expense in bringing litigation" in a claim brought under the Fair Credit Reporting Act ("FCRA"));  *Stevenson v. TRW*, 987 F.2d 288, 297 (5th Cir. 1993) (affirming an award of $30,000 for mental anguish for a claim brought under the FCRA);  *Collins v. Retail Credit Co.*, 410 F. Supp. 924, 932 (E.D. Mich. 1976) (finding that a jury award of $21,750 in compensatory damages for loss of reputation, embarrassment, and humiliation in the plaintiff's FCRA and libel claims was not excessive). However, the amounts awarded in those cases were for violations of the FCRA or acts of credit reporting negligence, not FDCPA violations.   Therefore, those cases are not persuasive.

The Plaintiff additionally relies on cases in which courts awarded actual damages for violations of the FDCPA.  *See, e.g., Belile v. Allied Med. Accounts Control Assoc. Bureaus, Inc.*, 209 B.R. 658, 663-65 (E.D. Pa. 1997)[5] (ordering each defendant to pay $100 in actual damages for threatening collections letter);  *Crossley v. Lieberman*, 90 B.R. 682, 689 (E.D. Pa. 1988) (ordering actual damages in the amount of $1,000 for threatening collections letter);  *S. Siding Co., Inc. v. Raymond*, 96-2168 (La. App., 1 Cir. 9/19/97); 703 So. 2d 44, 47-48 (reducing the jury's award of actual damages to husband and wife to

---

[5]  It is worth noting that, to the extent that a bankruptcy court considers actual damages during a bankruptcy proceeding, "[a] bankruptcy court's decision is not binding authority."  *Wenrich v. Robert E. Cole, P.C.*, No. CIV.A. 00-2588, 2001 WL 4994, at *7-*8 (E.D. Pa. Dec. 22, 2000) (commenting on the *Belile* decision).

$5,000 and $2,000, respectively, for anxiety and fear induced by threatening collections letter); *Venes v. Prof'l Serv. Bureau*, 353 N.W. 2d 671, 673 (Minn. Ct. App. 1984) (affirming jury's award of $6,000 in actual damages for the plaintiff's aggravated preexisting medical problems and undue stress resulting from receiving approximately ten threatening telephone calls); and *Smith v. Law Offices of Mitchell N. Kay*, 124 B.R. 182, 193 (D. Del. 1991) (holding that jury's award of $15,000 in actual damages for emotional distress resulting from three letters and one telephone call was grossly excessive).  These cases show that the amount of actual damages awarded for "personal humiliation, embarrassment, mental anguish, or emotional distress," *Reichers*, 2013 WL 6096136, at *2, can vary.  The Court notes, however, that these FDCPA-related decisions awarded actual damages in amounts significantly less than $15,000, the amount that Plaintiff is requesting.  Furthermore, several decisions reduced actual damages awards that were found to be excessive.  *See, e.g., S. Siding Co., Inc.*, 703 So. 2d at 47-48 (finding that the trial court abused its discretion in awarding actual damages in the amounts of $12,500 to Mr. Raymond and $5,000 to Mrs. Raymond, and reducing the awards to $5,000 and $2,000, respectively, as "the highest general damages awards reasonably within the trial court's discretion for [the plaintiffs'] injuries").  Therefore, the Court considers that these cases, standing alone, do not persuasively justify an award of $15,000 in this case.

In *Anderson v. Didonato*, 2012 WL 6553675, at *4, the court, having entered default judgment against the defendant, awarded the plaintiff $2,500 in actual damages for emotional distress.  There, the court found that the defendant "made unauthorized withdrawals from plaintiff's bank account[,]" "sent written correspondence to [the] plaintiff that included varying amounts due and which were intended to threaten and coerce her into

making payments[,]" and "made threats involving potential legal action via telephone that he in fact did not intend to carry out and could not have legally carried out." *Id.* The plaintiff alleged that she suffered "'headaches, panic attacks, embarrassment, anxiety, sleepless nights, and lost weight" as a result of the defendant's actions. *Id.* Based on these and other facts, the court found that the defendant's actions were "persistent, intentional, and directed to frighten and unnerve [the] plaintiff via coercive and illegal threats" and concluded that $2,500 was appropriate. *Id.*

Here, Plaintiff has alleged one instance of conduct that violates the FDCPA; namely, Plaintiff has alleged that Defendant violated 15 U.S.C. § 1692f when Defendant withdrew $115 from Plaintiff's debit card account after Plaintiff had explicitly revoked his consent to further withdrawals. *Motion* [#11] at 2. In his affidavit, Plaintiff describes that he "started to panic" after learning that Defendant made the unauthorized withdrawal because he "was supposed to go to New Mexico for [his] grandmother's funeral." *Pltf. Aff.* [#11-1] ¶ 7. Plaintiff states that he had to pay $35 as an overdraft fee, that this was "a very stressful time financially[,]" and that he "was worried" about not being able to meet all of his obligations, being evicted from his apartment, and a potential negative impact on his credit history. *Id.* at ¶ 8. As a result of the unauthorized withdrawal, Plaintiff states that he "did not have money to put gas in [his] car and drive down to New Mexico" for his grandmother's funeral because he had no other available funds. *Id.* ¶ 9. Plaintiff states that he "felt terrible for not being able to go to the funeral" and that he was "so depressed and emotionally distressed [that he] could not sleep or eat." *Id.* ¶ 10.

Taking the factual allegations as true with regard to liability, as established by virtue of default judgment, the Court determines that Plaintiff has demonstrated that he is entitled

to actual damages for emotional distress.  In measuring the amount of actual damages, the Court considers "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional."  15 U.S.C. § 1692k(b)(1) (2014).  The Court finds that Defendant's violation constituted one incident of illegal conduct, the conduct had a negative impact on Plaintiff's emotional and mental state and personal affairs, and that the violation was intentional. Accordingly, the Court awards Plaintiff $1,000 for emotional distress.  In addition, the Court orders Defendant to pay $150 to compensate Plaintiff for his out-of-pocket expenses, comprised of the $115 that Defendant withdrew from Plaintiff's account and the $35 overdraft fee.

### c.    Attorneys' Fees and Costs

Plaintiff seeks $2,553 in attorneys' fees and $465 in court costs.  *Motion* [#11] at 7. The FDCPA prescribes that a successful party is entitled to "the costs of the action, together with a reasonable attorney's fee as determined by the court."  15 U.S.C. § 1692k(a)(3) (2014).  Because default has been entered against Defendant and the Court has determined that Plaintiff sufficiently alleged that Defendant violated the FDCPA, Plaintiff is entitled to recover his reasonable attorneys' fees and costs.

To determine a reasonable fee request, the Court must begin by calculating the "lodestar amount." *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998). The lodestar amount is the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  The Tenth Circuit Court of Appeals has recognized the lodestar amount as presumptively reasonable. *Homeward Bound, Inc. v. Hissom Mem'l Ctr.*, 963 F.2d 1352, 1355 (10th Cir. 1992).  A

party seeking an award of attorney's fees must establish the reasonableness of each dollar and each hour for which the party seeks an award. *Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995).

### (i)   Hourly Rate

A "reasonable rate" is defined as the prevailing market rate in the relevant community for an attorney of similar experience. *Guides, Ltd. v. Yarmouth Grp. Prop. Mgmt., Inc.*, 295 F.3d 1065, 1078 (10th Cir. 2002); *Malloy v. Monahan*, 73 F.3d 1012, 1018 (10th Cir. 1996). The party requesting fees bears "the burden of showing that the requested rates are in line with those prevailing in the community." *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1203 (10th Cir. 1998). In order to satisfy his burden, Plaintiff must produce "satisfactory evidence–in addition to the attorney's own affidavits–that the

requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). "Unless the subject of the litigation is so unusual or requires such special skills that only an out-of-state lawyer possesses, the fee rates of the local area should be applied even when the lawyers seeking fees are from another area." *Bangerter*, 61 F.3d at 1510.

Plaintiff requests attorneys' fees calculated at the rate of $395 per hour for Larry Smith, *Motion* [#11] at 5; $225 per hour for Angel Bakov, *id.*; and paralegal fees at the rate of $115 per hour, *id.* In support of his attorneys' hourly rates, Plaintiff states that Mr. Smith has been licensed since 1993, *id.*; that he is the managing partner at SmithMarco, P.C., *id.*; that he is a consumer attorney, concentrating his practice in the FDCPA, the Fair Credit Reporting Act, consumer fraud, and Lemon Law, *Motion*, Ex. D [#11-4] ("Smith Aff.") at 4;

and that he has tried over 75 consumer rights cases to verdict, arbitrated over 800 cases, and settled "thousands" of consumer fraud, FDCPA and FCRA cases, *id.*  With respect to Mr. Bakov, Plaintiff states that Mr. Bakov has been licensed since 2012, *Motion* [#11] at 6, and that he handled FDCPA cases and defended debtors throughout Illinois, *id.*  In addition, Plaintiff relies on the Laffey Matrix to establish that his attorneys' hourly rates are reasonable.  *Motion* [#11] at 5.  Plaintiff notes that Mr. Smith charges $395 per hour, in contrast to the Laffey Matrix recognized rate of $510 per hour, and that Mr. Bakov charges $225 per hour, in contrast to the Laffey Matrix recognized rate of $250 per hour.  *Id.* at 6.

The Court notes that there has been no showing that the services provided in this case were so "unusual" or "special" to require out-of-state counsel.  *Bangerter*, 61 F.3d at 1510.  Thus, the Court will calculate fees based on prevailing rates in the Denver metropolitan area.  *See Scadden v. Weinberg, Stein & Assoc., LLC*, No. 12-cv-02454-PAB-MEH, 2013 WL 1751294, at *5 (D. Colo. Apr. 23, 2013).

Furthermore, as this Court has previously stated, the Laffey Matrix "does not adequately establish the prevailing rate for consumer law advocates in Colorado." *Reichers*, 2013 WL 6096136, at *3.  The Laffey Matrix establishes rates for attorneys and paralegals under fee-shifting statutes, such as 42 U.S.C. § 2000e-5k, based on the number of years since graduation from law school.  *Id.* (citations omitted).  The Laffey Matrix was prepared by the District of Columbia's U.S. Attorney's Office and is used to determine legal fees in the Washington D.C. or Baltimore area.  *See Motion* [#11-3] at 2.  Although the matrix can be adjusted for different regions, courts in other districts have found that the Laffey Matrix is not "more helpful than the rates actually used by other courts or the rates of law firms."  *Reichers*, 2013 WL 6096136, at *3 (citing *Howard v. Midland Credit Mgmt.,*

29

*Inc.*, No. 11-cv-03123-PAB-BNB, 2012 WL 4359361, at *3 (D. Colo. Sept. 24, 2012)). Thus, the Laffey Matrix is evidence of prevailing market rates in the Washington, D.C., area and is not germane to calculating rates in the Denver metropolitan region. *Scadden*, 2013 WL 1751294, at *5. Because the Laffey Matrix "is not indicative of the prevailing rate in Colorado, counsel's affidavits do not sufficiently establish a prevailing market rate of $395 and $225 per hour for attorneys with Smith and Bakov's experience." *Reichers*, 2013 WL 6096136, at *3. "If the district court does not have adequate evidence of prevailing market rates for attorney fees, then it may, 'in its discretion, use other relevant factors, including its own knowledge, to establish the rate.' A district judge may consider his or her 'own knowledge of prevailing market rates as well as other indicia of a reasonable market rate.'" *Id.* (quoting *Lippoldt v. Cole*, 468 F.3d 1204, 1225 (10th Cir. 2006)).

The weight of authority establishes that the prevailing rate in Colorado is $200-$250 per hour for attorneys representing clients in FDCPA cases, depending on the attorneys' experience. *See, e.g., Hemphill v. Ace Adjustment Co., Inc.*, No. 13-cv-01214-RM-BNB, 2014 WL 4783832, at *3 (D. Colo. Sept. 25, 2014); *Gregg v. N.A.R., Inc.*, No. 13-cv-01313-PAB-BNB, 2014 WL 959412, at *1 (D. Colo. Mar. 12, 2014); *Reichers*, 2013 WL 6096136, at *4; *Stauffer v. NCC Bus. Servs., Inc.*, No. 13-cv-00243-PAB-KLM, 2013 WL 2444827, at *2 (D. Colo. June 5, 2013); *Peterson-Hooks v. First Integral Recovery, LLC*, No. 12-cv-01019-PAB-BNB, 2013 WL 2295449, at *7 n.10 (D. Colo. May 24, 2013) (collecting cases). Therefore, the Court will reduce Mr. Smith's rate from $395 to $250 per hour, and Mr. Bakov's rate from $225 to $200. *See Peterson-Hooks*, 2013 WL 2295449, at *8 (finding $200 a reasonable rate for an attorney with 1.5 years of experience).

In addition, the Consumer Law Attorney Fee Survey lists the median paralegal rate

for all paralegals in the Western region as $99.  *See Rodriquez v. Luchey & Mitchell Recovery Solutions, LLC*, 2013 WL 6068458, at *2 (D. Colo. Nov. 18, 2013); *Scadden*, 2013 WL 1751294, at *6; *see* Ronald L. Burdge, United States Consumer Law Attorney Fee Survey Report 2010-2011 at 42, available at www.nclc.org/images/pdf/litigation/fee-survey=report-2010-2011.pdf.  Plaintiff states that "[p]aralegals at SmithMarco, P.C., have an hourly rate of $115 per hour."  *Motion* [#11] at 5.  However, neither Plaintiff's Motion [#11] nor any attached affidavits contain information about the experience or qualifications of the paralegals who performed the work in Plaintiff's case.  D.C.COLO.LCivR 54.3 requires that "a motion for attorney fees shall be supported by [an] affidavit" and the "motion shall include the following for each person for whom fees are claimed: (1) a summary of relevant qualifications and experience . . . ."  With regard to the fees requested for work performed by a paralegal, Plaintiff has not complied with this rule.   Some jurisdictions will award fees for work performed at the prevailing rate in the local community even in the absence of the provision of specific biographical information about a paralegal.  *See, e.g., Pilitz v. Incorporated Village of Freeport*, No. CV 07-4078(ETB), 2011 WL 5825138, at *5 (E.D.N.Y. Nov. 17, 2011) ("Where, as here, the moving party fails to provide any biographical information to support the reasonableness of the rates, the court may use its discretion to award fees at a lower rate than requested." (quotation marks and citation omitted)); *Livingston v. Cavalry Portfolio Servs., LLC*, No. 1:09-CV-384, 2009 WL 4724268, at *7 (N.D. Ohio Dec. 2, 2009) (awarding paralegal fees at the rate of $113 per hour even though "Mr. Livingston ha[d] not attached biographies or affidavits of either paralegal . . . ."); *Torres v. City of New York*, No. 07 Civ. 3473(GEL), 2008 WL 419306, at *2 (S.D.N.Y. Feb. 14, 2008) (awarding fees for work performed by paralegal at rate of $80 per hour even

though "[a]lthough it [was] his burden to do so, plaintiff present[ed] no evidence regarding the skills, qualifications, or experience of the paralegal here."). However, this Court's Local Rules mandate that this information be provided to the Court before it may award any such fees. Therefore, to the extent the Motion seeks an award of work performed by a paralegal, the Court **recommends** that such request be **denied**. *But see Reichers v. Delaware Asset Mgmt, LLC*, No. 13-cv-02171-CMA-CBS, 2013 WL 6096136, at * (D. Colo. Nov. 20, 2013) ("Although the paralegal who worked on this case has been certified as a paralegal for ten years, her affidavit contains no information about her actual experience working in this field. Therefore, the Court finds that $75.00 per hour is a reasonable rate." (citations omitted)); *Rodriguez*, 2013 WL 6068458, at *2 (awarding fees for work performed by paralegals at a rate of $99 per hour even though plaintiff did not provide "any indication of each paralegal's qualifications and experience."); *Scadden*, 2013 WL 1751294, at *6 (awarding paralegal fees at the rate of $75 per hour even though the plaintiff "ha[d] not provided any information regarding the skills or experience of the paralegals who worked on this case . . . .").

### (ii)     Number of Hours

In determining the reasonableness of the hours expended, a court considers several factors. First, it considers whether the fees pertain to tasks that would ordinally be billed to a client. *See Ramos v. Lamm*, 713 F.2d 546, 554 (10th Cir. 1983), *overruled on other grounds by Penn. v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711, 717 n.4 (1987). It is Plaintiff's burden "to prove and establish the reasonableness of each dollar, each hour, above zero." *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1210 (10th Cir.

1986) (quotations omitted). "The Supreme Court, recognizing that not all hours expended in litigation are normally billed to a client, noted that an applicant should exercise 'billing judgment' with respect to a claim of the number of hours worked." *Malloy*, 73 F.3d at 1018. Further, "[c]ounsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, . . . [h]ours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Hensley,* 461 U.S. at 434.   Hence, the court has a "corresponding obligation to exclude hours 'not reasonably expended' from the calculation." *Malloy*, 73 F.3d at 1018.  A court should take extra care to ensure that an attorney has not included unjustified charges in his billing statement. *Praseuth v. Rubbermaid, Inc.*, 406 F.3d 1245, 1257 (10th Cir. 2005).  A court should also consider whether the amount of time spent on a particular task appears reasonable in light of the complexity of the case, the strategies pursued, and the responses necessitated by an opponent's maneuvering. *Id.* Ultimately, the Court's goal is to fix a fee that would be equivalent to what the attorney would reasonably bill for those same services in an open market and fees will be denied for excessive, redundant, and otherwise unnecessary expenses. *Ramos*, 713 F.2d at 553.

In reaching a determination the Court "need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Fox v. Vice*, 563 U.S. ---, 131 S.Ct. 2205, 2216 (2011); *Malloy*, 73 F.3d at 1018 ("the district court need not identify and justify every hour allowed or disallowed, as doing so would run counter to the Supreme Court's warning that a 'request for attorney's fees should

33

not result in a second major litigation'" (citation and internal quotation marks omitted)).

Here, after a thorough review of the briefs, the billing records, the affidavits, and the pleadings filed in this case, the Court concludes that Plaintiff has met his burden of showing that the 5.8 hours listed in Plaintiff's Motion, Ex. B [#11-2] for the corresponding work performed in the case by Mr. Smith and Mr. Bakov were reasonably expended in this litigation.  Therefore, the total award for Mr. Smith's fees is $1,125 (*See Motion* [#11] at 7 (4.5 hours x $250 = $1,125)).  The total award for Mr. Bakov's fees is $260 (*See id.* (1.3 hours x $200 = $260).  Accordingly, the Court **recommends** that Plaintiff be awarded a total of $1,385.00 in attorneys' fees.

## V.  Conclusion

For the foregoing reasons, it is respectfully **RECOMMENDED** that the Motion [#11] be **GRANTED in part** and **DENIED in part,** and that **default judgment** be entered in favor of Plaintiff and against Defendant in the amount of $3,535.00, which is comprised of $1,000 for statutory damages; $1,000 in compensatory damages for emotional distress; $150 in compensatory damages for Plaintiff's out-of-pocket losses; and $1,385.00 for reasonable attorneys' fees.

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal

questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).   A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.   *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated:  December 12, 2014

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge